**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **KIA ROBINSON and ALEXIS KELLER-LAMONDE**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**NTT DATA SERVICES, LLC** and **TRANSACTION APPLICATIONS GROUP, INC.,** jointly and severally,<br><br>Defendants. | : | Case No:<br><br>Hon.<br><br>Mag. |

**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiffs, Kia Robinson an Alexis Keller-Lamonde ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against Defendants, NTT DATA Services, LLC ("NTT") and Transaction Applications Group, Inc., ("TAG") (collectively "Defendants"), and states as follows:

**INTRODUCTION**

1. This is a collective and class action complaint brought pursuant to 29 U.S.C. § 216(b) by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., Fed. R. Civ. P. 23, Nebraska Wage and Hour Act, Neb. Rev. Stat. §§ 48-1201–48-1209, Nebraska's Wage Payment and Collection Act, Neb. Rev. Stat. §§ 48-1228–48-1232, and common law.

2. According to Defendants' website, "[Defendants are] a trusted partner to [their] clients, providing end-to-end solutions that span the globe. Innovation is woven into the fabric of

[their] company, and [they] continually strive to create new value within [their] global markets. From strategic consulting to leading-edge technologies, [they] enable experiences that transform organizations for success, disrupt industries for good and shape a better society for all."[1]

3. In providing the aforementioned services, Defendants employed non-exempt hourly employees in their brick-and-mortar call centers and in remote call center settings across the United States. Defendants used a number of titles, including but not limited to, Customer Care Associate, Customer Service Representative, Call Center Representative, Collections Agent, Claims Examiner, Quality Assurance, Help Desk, Team Lead, and IT Desk Support, to refer to their hourly call center employees who field and make customer calls and respond and/or troubleshoot customer inquiries and problems (collectively referred to herein as "Representatives").

4. Regardless of specific job title, all of Defendants' Representatives were paid: on an hourly basis; classified as non-exempt; regularly worked forty (40) or more hours per workweek; relied on a computer and essential computer programs to perform their job duties daily; required to perform work off-the-clock before, during and after their scheduled shifts when they were not logged into Defendants' timekeeping system; and subject to the same relevant policies.

5. The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendants Representatives, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[2]

6. One of those abuses, which is at issues in this case is the employer's refusal to pay

---

[1] *See* https://us.nttdata.com/en/ (last visited July 22, 2025).
[2] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers (last visited July 22, 2025).

for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.*

7. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job related activities, must be kept." *Id.*

8. Defendants violated the FLSA and common law by systematically failing to compensate their Representatives for work tasks completed before and after their scheduled shifts when they were not logged into Defendants' timekeeping system. This policy resulted in Representatives not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime, and in non-overtime workweeks for regular hours.

9. In addition to this pre- and post-shift work, Defendants also required their Representatives to perform mid-shift work during their unpaid meal periods. The Representatives duties performed during their unpaid meal periods included similar login procedures. 29 C.F.R. § 785.19(a).

10. More specifically, Defendants failed to compensate their Representatives for the substantial time they spent performing essential work tasks prior to clocking into and after clocking out of Defendants' timekeeping system at the end of each shift, and before and after their unpaid meal periods.

11. Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding them unpaid back wages, liquidated

damages, attorneys' fees and costs to make them and the putative Collective and Class whole for damages they suffered, and any other remedies to which they are entitled, and to help ensure Defendants will not subject future workers to the same illegal conduct in the future.

12. At the earliest time possible, Plaintiffs will request a Court-authorized notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendants at any time in the past three years.

13. All current and former hourly call center employees who worked for Defendants at any time in the past three years and who were required to boot up a computer and open various computer programs and applications in order to perform their job duties (the "FLSA Collective").

## PARTIES

14. Plaintiff Kia Robinson is a resident of Memphis, Tennessee and worked for Defendants as a remote non-exempt Representative from approximately August 2023 until February 2025. Defendants compensated Plaintiff Robinson through the payment of an hourly rate, most recently $15.50 per hour. Plaintiff Robinson signed a consent to join this collective action, which is attached as **Exhibit A**.

15. Plaintiff Alexis Keller-Lamonde is a resident of Waco, Nebraska and worked for Defendants as a remote non-exempt Representative from approximately October 2022 until January 2024. Defendants compensated Plaintiff Keller-Lamonde through the payment of an hourly rate, most recently $15.50 per hour. Plaintiff Keller-Lamonde signed a consent to join this collective action, which is attached as **Exhibit B**.

16. Additional putative collective members were or are employed by Defendants throughout the United States as non-exempt call center representatives ("Representatives") during the past three years and their consent forms will also be filed in this case.

17. Defendant NTT Data Services LLC is a Delaware limited liability company whose registered agent for service of process is listed as Corporation Service Company, D/B/A CSC-Lawyers INCO, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

18. Defendant NTT Data Services LLC maintains its principal place of business at 7950 Legacy Dr., Floor 11, Plano, Texas 75024.

19. NTT "help[s] your organization grow faster and create new business models to adapt to the changing digital landscape. [Its] portfolio includes business and technology consulting, data and intelligence, applications, cloud, networks, data, and much more. With the unrivalled breadth and depth of [its] full-stack capabilities, [it's] the strategic partner for your long-term success."[3]

20. NTT employs thousands of hourly representatives throughout the United States to carry out its services. According to NTT's website, "We're one of the largest and fastest growing technology brands. We've combined NTT DATA and NTT Ltd. making us one of the fastest growing global technology brands with 190,000+ employees operating in 57 countries."[4]

21. In or around November 2016, Defendant NTT acquired Dell Services, including Transaction Applications Group, Inc. Since that time, TAG has operated as a corporate division, subsidiary, or affiliate of NTT. On information and belief, TAG does not operate independently but is fully integrated into NTT's business operations. TAG and NTT jointly set employment policies, schedules, and compensation practices for Plaintiff and other Representatives.

22. Defendant Transaction Applications Group ("TAG") is a Nebraska corporation which is registered with the Texas Secretary of State and whose registered agent for service of process is listed as Corporation Service Company, D/B/A CSC-Lawyers INCO, 211 E. 7th Street,

[3] *See* https://us.nttdata.com/en/services (last visited July 23, 2025).
[4] *See* https://us.nttdata.com/en/about-us/content/why-ntt-data (last visited July 22, 2025).

Suite 620, Austin, Texas 78701.

23. Defendant Transaction Applications Group maintains a principal place of business at 7950 Legacy Dr., Floor 11, Plano, Texas 75024.

24. From at least on or around November 2016 to the present, Defendant TAG was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

25. Defendant NTT is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

26. Together, Defendants conduct business under the name NTT Data and operate their business as a single, integrated enterprise.

27. Defendant TAG is a wholly owned subsidiary of and/or operating division of Defendant NTT. Upon information and belief, Defendant TAG operates as an integrated component of NTT's business process outsourcing and customer support services, and is under the direct control and supervision of Defendant NTT Data.

**JURISDICTION AND VENUE**

28. This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, et seq.

29. Additionally, this Court has jurisdiction over Plaintiffs' FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer…in any Federal or State court of competent jurisdiction."

30. Defendants' annual sales exceed $500,000, and Defendants employ more than two individuals; thus the FLSA applies in this case on an enterprise basis. Defendants' Representatives engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

31. This Court also has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367 because they originate from the same facts that form the basis of their federal claims.

32. This Court has personal jurisdiction over Defendant NTT because it conducts business within the state of Texas, maintains its principal place of business in the state of Texas, is registered with the Texas Secretary of State, and employs individuals within the state of Texas and throughout the United States via its numerous, wholly owned subsidiaries.

33. This Court has personal jurisdiction over Defendant TAG because it conducts business within the state of Texas, maintains its principal place of business in the state of Texas, is registered with the Texas Secretary of State, and employs individuals within the state of Texas and throughout the United States.

34. At all relevant times NTT and TAG jointly employed Plaintiffs and all other Representatives within the meaning of the FLSA, 29 U.S.C. § 203(d), maintained centralized control over terms and conditions of employment, and acted in a unified manner with respect to employment practices, policies, supervision, scheduling, and payroll.

35. Defendants are engaged in a single, integrated "enterprise" through "common operations" and/or "common control" under the FLSA, 29 U.S.C. §§ 201, *et seq*.

36. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants employ Representatives in this District, conduct business in this District, and a substantial portion of the events that give rise to Plaintiff's claims occurred in this District.

**GENERAL ALLEGATIONS**

37. Prior to hiring prospective Representatives, Defendants provided them with a written offer setting forth the job title, the offered rate of pay, and the conditions of their

employment.

38. Defendants maintained documents demonstrating the promised hourly wage for each hourly employee, including but not limited to: offer letters, paystubs, and/or payroll records.

39. Plaintiffs received offer letters from Defendants to work as Representatives and they accepted Defendants' offers with the understanding that their base rate would be paid for all hours worked.

40. Plaintiffs performed under their agreements with Defendants carrying out their job duties and responsibilities. More specifically, Plaintiffs fielded inbound calls from and made outbound calls to Defendants' clients and clients' customers, provided customer care support; handled and resolved escalated customer inquiries, issues and complaints; provided appropriate solutions; and maintained records of customer interactions. Plaintiffs utilized Defendants' applications and systems to track all events and customer service information. Plaintiffs additionally performed the required unpaid off-the-clock work explained below.

41. Defendants paid their Representatives varying hourly rates.

42. Defendants' Representatives typically worked five (5) days each week and up to, and on occasion more than, forty (40) hours per week. While Defendants have access to all payroll records, Plaintiffs do not, and there were one or more instances during Plaintiffs' employment when they worked forty (40) hours or more in a workweek and less than forty (40) hours in a workweek.

43. Defendants provided training to Representatives on, *inter alia*, how to carry out their day-to-day job duties, how to load and log into their computer programs at the beginning of the day, and how log out at the end of each day; how to track their time in Defendants' timekeeping system; attendance schedule, and call quality expectations; and Defendants' policies. The training

that Defendants provided to all of their Representatives was substantially, if not entirely the same, and all Representatives were subject to the same and/or substantially similar policies and quality assurance reviews.

44. At all relevant times, Defendants controlled Plaintiffs' and all other Representatives' work schedules, duties, protocols, applications, assignments, and employment conditions.

45. Defendants required Plaintiffs and all other Representatives to use a computer and a variety of integral and indispensable computer programs, applications, and servers that were necessary to the performance of their job duties.

46. Defendants instructed Plaintiffs and all other Representatives to be "call ready" the moment their scheduled shift started. This required Defendants' Representatives to log into and load all of their essential work-related computer programs and applications prior to the start of their shifts so they could be prepared to take calls the moment their shift began. During the boot-up and login process, Defendants' Representatives often experienced technical difficulties, increasing the amount of off-the-clock work they performed that day.

47. Defendants enforced their "call ready" policy and required their Representatives to perform off-the-clock through their uniform attendance, compensation, timekeeping, and schedule adherence procedure; and the call quality assurance system it used or "customer satisfaction (CSAT)" and service metrics.

48. Defendants additionally maintained schedule adherence and attendance metrics pursuant to which it monitored the Representatives' clock in times in relation to their start of shift times, as well as the time the Representatives went into a "ready" status. Defendants enforced these policies and procedures by routinely evaluating, and at times disciplining, the

Representatives. This discipline included, but was not limited to verbal and written warnings, and termination.

49. Defendants' Representatives also performed off-the-clock work during their unpaid 30-minute meal period, for example undergoing some or all of the computer boot-up process mentioned above.

50. Thus, Defendants forced their Representatives to perform some, if not all, of the boot-up and login process before the start of their shift and upon returning from their meal periods before they were allowed to clock in.

51. All of Defendants' Representatives used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the Representatives' work and they could not perform their jobs without them.

52. Similarly, Defendants' Representatives, including Plaintiffs, performed work off-the-clock after their scheduled shift, after clocking out of Defendants' timekeeping system, when they shut-down/logged out of the programs and applications that they utilized during their shifts.

53. At all relevant times, Defendants used their attendance and adherence policies against Plaintiffs and their Representatives in order to require them to perform pre-, mid- and post-shift work off-the-clock.

54. The pre-, mid-, post-shift off-the-clock time Plaintiffs and all other Representatives spent booting up/logging into and shutting down their computers and applications and programs directly benefited Defendants and was integral and indispensable to the Representatives' job responsibilities.

55. As a result of the off-the-clock work described herein, Plaintiffs and all other

Representatives were unlawfully deprived of approximately twenty-three (23) to fifty (50) minutes of compensation every shift.

56. At all relevant times, Defendants were able to track the amount of time Plaintiffs and other Representatives spent in connection with the pre-, mid-, and post-shift activities; however, Defendants failed to do so and failed to compensate Plaintiffs and all other Representatives for the off-the-clock work they performed thus breaching their agreements with their Representatives.

57. Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendants to establish that they acted in good faith.

58. Despite knowing Plaintiffs and all other Representatives performed this pre-, mid- and post-shift work, Defendants and their managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

59. Defendants possess, control, and/or have access to information and electronic data indicating the times Plaintiffs and all other Representatives booted-up and logged into their computers each shift, along with the time they logged into the timekeeping system.

60. Because Defendants required their Representatives, including Plaintiffs, to perform pre-, mid- and post-shift work off-the-clock, the hours tracked in Defendants' timekeeping system are inaccurate representations of the total amount of time Representatives spent working for Defendants. Thus, the hours reflected on the Representatives' paystubs are also inaccurate representations of the hours they actually worked.

**A. <u>Pre-Shift Off-the-Clock Work</u>**

61. The off-the-clock pre-shift process took substantial time on a daily basis, approximately five (5) to thirty (30) minutes per shift. Specifically, before each shift,

Representatives were required to undertake essential work tasks such as turning on or waking up their computer; waiting for the computer to turn on; logging into their computer with a username and password; and connecting to Defendants' virtual private network ("VPN") using a dual authentication process through which Representatives received a push notification on their cell phones and confirmed their identity; opening various programs and applications that were integral and indispensable to their job duties as Representatives (for example, Salesforce, Okta, Cisco Microsoft Outlook, Teams, Finesse, and Fiori); and logging in.

62. Defendants' Representatives had to complete much, if not all, of this process before: (1) the start of their scheduled shifts; (2) they were allowed to clock into Defendants' timekeeping program; and (3) fielding calls. Consequently, the Representatives had to begin working at least five (5) to thirty (30) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

63. Defendants' Representatives were not compensated for all of this time because, among other things, Defendants prohibited Representatives from clocking into their timekeeping software until a limited and finite number of minutes before the start of their scheduled shift, and the boot-up process took longer than this amount of time to perform each day.

64. The pre-shift off-the-clock work Representatives performed directly benefited Defendants and was integral and indispensable to their job duties and responsibilities as Representatives.

65. Thus, in workweeks where Defendants' Representatives worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendants violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; (2)

pay them straight time for all regular hours worked up to forty (40); and (3) record all of the time that their Representatives, including Plaintiffs, worked for Defendants' benefit.

66. If Representatives started logging in immediately prior to their scheduled shifts, they were in danger of clocking in late because they could not complete the required pre-shift work necessary to be "call ready" when their scheduled shifts began and it was time to clock in, and they would therefore receive a tardy on their records and poor schedule adherence scores.

67. Defendants' Representatives were only compensated for the time spent on the phone or in "call ready" status.

68. Because Defendants' Representatives typically worked scheduled shifts of at least 40 hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 time their regular rate of pay.

69. Defendants had express and constructive knowledge that their Representatives began the pre-shift boot-up and login process while off-the-clock in order to make sure they were "call ready" and clocked in on time.

70. Defendants' policies and practices discouraged their Representatives from recording all time worked.

**B. Mid-Shift Off-the-Clock Work**

71. Defendants provided their Representatives with a scheduled 30-minute unpaid meal period during each work shift.

72. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period. C.F.R. § 785.19(a) states:

> **Bona fide meal periods.** Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods.

> The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

73. According to the U.S. Department of Labor, "[r]est periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked. Bona fide meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal." (*See* DOL Fact Sheet #64 cited herein at fn. 2).

74. Defendants did not provide their Representatives with legitimate bona fid meal periods because it required the Representatives to return to their computer stations prior to the end of their unpaid meal periods to unlock and log back into their computer and programs/applications, and place themselves in "ready" so they could resume taking/making calls/emails promptly at the end of their scheduled meal periods.

75. The off-the-clock mid-shift process took substantial time, approximately five (5) to ten (10) minutes per shift. The process was similar to the pre-shift login process described herein and this time went uncompensated.

76. Because Defendants' Representatives typically work scheduled shifts of at least forty (40) hours per week, their required mid-shift work was nearly always overtime work compensable at 1.5 times their regular rate of pay.

77. The unpaid off-the-clock work Plaintiffs and other Representatives perform during their meal periods and prior to clocking back into Defendants' timekeeping system is compensable, directly benefits Defendants and the tasks undertaken in connection with the off-the-clock work

are integral and indispensable to their job duties and responsibilities as Representatives.

**C. <u>Post-Shift Off-the-Clock Work</u>**

78. Pursuant to Defendants' policies, training, and direction, Plaintiffs and all other Representatives were required to clock-out the moment their scheduled shift concluded or when they finished fielding their last customer call for the shift and *before* completing call documentation, sending emails, closing the programs and applications they used during their scheduled shift, shutting down their system.

79. This resulted in Plaintiffs and other Representatives performing approximately three (3) to ten (10) minutes of off-the-clock work every shift.

80. Thus, in workweeks where Defendants' Representatives worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendants violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; (2) pay them straight time for all regular hours worked up to forty (40); and (3) record all of the time that their Representatives, including Plaintiffs, worked for Defendants' benefit.

81. The post-shift off-the-clock work Plaintiffs and other Representatives performed was compensable, directly benefited Defendants and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Representatives' job duties and responsibilities.

**D. <u>The Off-the-Clock Work Results in Viable "Gap Time" Claims</u>**

82. A Gap time claim is "A claim seeking compensation for hours worked in a week that are not in excess of forty, when the average wage paid over all hours worked fewer than forty is not below minimum wage, is known as a 'gap time.' " *Roberts v. Baptist Healthcare Sys., LLC*,

2020 WL 7042965, at *5 (E.D. Tex. Nov. 30, 2020).

83. Plaintiffs and similarly situated Representatives, regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

84. During the weeks that Representatives do not work over forty (40) hours in a workweek, the outcome of Defendants' policies and practices was a deprivation of straight-time wages, in breach of Defendants' contracts with their Representatives.

**E. <u>Defendants Benefitted from the Representatives' Off-the-Clock Work</u>**

85. At all relevant times, Defendants have required and directly benefitted from the off-the clock work performed by Plaintiffs and all other Representatives in connection with the pre-, mid-, and post-shift activities described above.

86. At all relevant times, Defendants controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiffs and all other Representatives.

87. At all relevant times, Defendants have been able to track the amount of time Plaintiffs and all other Representatives spend in connection with the pre-, mid-, and post-shift activities; however, Defendants have failed to do so and have failed to compensate Plaintiffs and all other Representatives for the off-the-clock work they performed.

88. At all relevant times, Plaintiffs and all other Representatives have been non-exempt hourly employees, subject to the requirements of the FLSA.

89. At all relevant times, Defendants used their attendance and adherence policies against Plaintiffs and the Representatives in order to pressure them into performing pre-, mid-, and post-shift work off-the-clock.

90. Defendants expressly trained and instructed Plaintiffs and all other Representatives to perform these off-the-clock work activities when they were not clocked into Defendants'

timekeeping system.

91. Defendants instructed Representatives to have all work applications and systems fully loaded before the start of their shifts, which takes them in the range of five (5) to thirty (30) minutes per day, but Defendants prohibited Representatives from clocking into the timekeeping software and marking themselves "call ready" before the start of the scheduled shift while simultaneously requiring the Representatives to be call ready the moment their shifts begin.

92. At all relevant times, Defendants' policies and practices deprived Plaintiffs and the Representatives of wages owed for the pre-, mid-, and post-shift activities they performed.

93. During the weeks that Representatives work over forty (40) hours in a workweek, the outcome of Defendants' policies and practices is a deprivation of overtime wages, which are compensable under the FLSA.

94. Defendants are in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiffs worked over forty (40) hours and exactly which weeks she worked under forty (40) hours.

95. Defendants have known or should have known that the time spent by Plaintiffs and other Representatives in connection with pre-, mid- and post-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendants to establish that they acted in good faith by not compensating the Representatives for the time at issue in this action.

96. Unpaid wages related to the off-the-clock work described herein are owed to Plaintiffs at the FLSA-mandated overtime premium of one and one-half the Plaintiffs' regular hourly rate because Plaintiffs worked in excess of forty (40) hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

97. Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

> *All current and former hourly representatives who worked for Defendants at any time during the past three years preceding the filing of this Complaint up through and including judgment and required the use of a computer and programs and applications in order to perform their job duties.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

98. Defendants are liable under the FLSA for, inter alia, failing to properly compensate Plaintiffs and others similarly situated.

99. Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside sales persons.

100. Defendants are engaged in a common "enterprise" through "common operations" and/or "common control" under the FLSA, 29 U.S.C. § 203(r)(1), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.; 29 C.F.R. § 791.237.

101. Defendants are "joint employers" within the meaning of the FLSA, and have, to their mutual financial benefit and competitive business advantage, harmed Plaintiff and all others similarly situated in violation of the FLSA.

102. Consistent with Defendants' policies and practice, Plaintiffs and the proposed FLSA Collective were not paid all straight and/or premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

103. All of the work Plaintiffs and the proposed FLSA Collective performed was

assigned by Defendants, and/or Defendants were aware of all of the work Plaintiffs and the proposed FLSA Collective performed.

104. Defendants were aware, or should have been aware, that federal law required them to pay Plaintiffs and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

105. As part of their regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but it not limited to:

a. Willfully failing to pay their employees, including Plaintiffs and the FLSA Collective members, for all regular hours they worked off-the-clock in non-overtime workweeks;

b. Willfully failing to pay their employees, including Plaintiffs and the FLSA Collective members, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

c. Willfully failing to record all of the time that their employees, including Plaintiffs and the FLSA Collective members, worked for Defendants' benefit.

106. Defendants' unlawful conduct has been widespread, repeated, and consistent.

107. Upon information and belief, Defendants utilized a centralized payroll system that calculated overtime pay for all similarly situated employees in the same or similar manner.

108. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policies, or plans;

and (d) they claims are based upon the same factual and legal theories.

109. The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are (1) required to work without compensation due to uncompensated boot-up and shut-down time; and (2) entitled to their regular hourly wage, including a shift differential where applicable, in non-overtime workweeks, overtime gap time in applicable weeks and overtime for hours worked over forty (40) in a week.

110. Plaintiffs estimate the FLSA Collective, including both current and former Representatives over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendants' personnel and payroll records.

111. The FLSA Collective should be notified of this action and allowed to opt-in pursuant to pursuant to 29 U.S.C. § 216. Unless the Court promptly issues such a notice, the FLSA Collective members, who were lawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which Defendants unlawfully withheld from them.

## RULE 23 NEBRASKA CLASS ACTION ALLEGATIONS

112. Plaintiff Keller-Lamonde brings this action pursuant to Fed. R. Civ. P. 23 (b)(3) on behalf of

> *All current and former similarly situated Representatives who worked for Defendants at any time in Nebraska during the applicable statutory period and required the use of a computer and programs and applications in order to perform their job duties.*

(hereinafter referred to as the "Rule 23 Nebraska Class"). Plaintiff reserves the right to amend this definition if necessary.

113. Plaintiff is unable to state the exact size of the Rule 23 Nebraska Class but, upon information and belief, avers that it consists of more than 100 people. Rule 23 Nebraska Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

114. There is a well-defined community of interests among Rule 23 Nebraska Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nebraska Class. These common legal and factual questions include, but are not limited to, the following:

a. Whether Rule 23 Nebraska Class members performed unpaid pre-, mid- and post-shift work activities, and if so, whether such work activities are compensable;

b. Whether Rule 23 Nebraska Class members are owed wages for time spent performing pre-, mid- and post-shift work activities, and if so the appropriate amount thereof;

c. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Nebraska Class member regular wages or minimum wages for each non-overtime hour worked;

d. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Nebraska Class member overtime compensation for each overtime hour worked;

e. Whether the Rule 23 Nebraska Class members are owed wages for time spent performing pre-, mid- and post-shift activities, and if so, the appropriate amount thereof; and

f. Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating the state laws, constitutions, and wage acts applicable to the members of the Rule 23 Nebraska Class.

115. Plaintiff's claims are typical of those of the Rule 23 Nebraska Class in that she and all other Rule 23 Nebraska Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from

the same pay policies, practices and promises and course of conduct as all other Rule 23 Nebraska Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nebraska Class members.

116. Plaintiff will fully and adequately protect the interests of the Rule 23 Nebraska Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nebraska Class.

117. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nebraska Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

118. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendants have advanced networked computer payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

119. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

**<u>RULE 23 NATIONWIDE CLASS ALLEGATIONS</u>**

120. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

> *All current and former similarly situated Representatives who worked for Defendants at any time during the applicable statutory period and required*

*the use of a computer and programs and applications in order to perform their job duties.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiffs reserve the right to amend this definition if necessary.

121. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

122. There is a well-defined community of interests among the Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

b. Whether the mid-shift time Rule 23 Nationwide Class members spent on start-up and login activities each shift is compensable time under applicable law;

c. Whether the post-shift time Rule 23 Nationwide Class members spent closing all programs, applications and networks is compensable time under applicable law;

d. Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract; and

e. Whether Defendants' non-payment of wages for all compensable time resulted in an unjust enrichment to Defendants.

123. Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiffs' claims arise

from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

124. Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiffs retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

125. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

126. This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

127. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

128. Because Defendants have acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 201, et seq. – FAILURE TO PAY OVERTIME**

129. Plaintiffs re-allege and incorporate all previous paragraphs herein.

130. At all times relevant to this action, Defendants were subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

131. At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

132. At all times to this action, Plaintiffs and the FLSA Collective members were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

133. At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs and the FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

134. Plaintiffs and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

135. Plaintiffs either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

136. The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

137. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

138. At all times to this action, Defendants engaged in an unlawful policy and practice of requiring Plaintiffs and all the FLSA Collective members to work off-the-clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

139. The off-the-clock performed every shift by Plaintiffs and the FLSA Collective was an essential part of their jobs and these activities, and the time associated with these activities, was significant.

140. In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

141. As a result of Defendants' unlawful policies and practices, Plaintiffs and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

142. Defendants' violations of the FLSA were knowing and willful. Defendants could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective members for all work activities, but did not.

143. As a result of the foregoing, Plaintiffs were injured and seek appropriate relief against Defendants including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest,

and all other relief just and appropriate under the circumstances.

**COUNT II**
**RULE 23 NEBRASKA CLASS ACTION**
**VIOLATIONS OF THE NEBRASKA WAGE AND HOUR ACT (“NWHA”), NEB. REV. STAT. §§ 48-1201–48-1209, NEBRASKA’S WAGE PAYMENT AND COLLECTION ACT (“NWPCA”), NEB. REV. STAT. §§ 48-1228–48-1232**

144. Plaintiff Keller-Lamonde re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

145. At all times relevant to the action, Defendant was an employer covered by the mandates of the NWHA and the NWPCA, and Plaintiff and the Rule 23 Nebraska Class members were employees entitled to their protections. *See* Neb. Rev. Stat. §§ 48-1202, 48-1229.

146. The Nebraska Wage and Hour Act entitles employees to compensation for every hour worked in a workweek. *See* Neb. Rev. Stat. § 48-1203.

147. Under NWPCA § 48-1230, “each employer shall pay all wages when due its employees on regular days designated by the employer or agreed upon by the employer and employee. […] On each regular payday, the employer shall deliver or make available to each employee, by mail or electronically, or shall provide at the employee's normal place of employment during employment hours for all shifts a wage statement showing, at a minimum, the identity of the employer, the hours for which the employee was paid, the wages earned by the employee, and deductions made for the employee.” Neb. Rev. Stat. § 48-1230.

148. Under Neb. Rev. Stat § 48-1230.01 “whenever an employer […] separates an employee from the payroll, the unpaid wages shall become due on the next regular payday or within two weeks of the date of termination, whichever is sooner.”

149. The NWHA § 48-1206 provides that an employee who is not paid in accordance with the Nebraska Wage and Hour Act may maintain an action to “recover unpaid minimum wages

as provided in subsection (4) of this section […] in any court of competent jurisdiction by any one or more employees for and in behalf of himself, herself, or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated. The court in which any action is brought under this subsection shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs of the action and reasonable attorney's fees to be paid by the defendant."

150. The NWPCA § 48-1231 provides that "An employee having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon may institute suit for such unpaid wages in the proper court. If an employee establishes a claim and secures judgment on the claim, such employee shall be entitled to recover the full amount of the judgment and all costs of such suit, including reasonable attorney's fees." Furthermore under NWPCA 48-1232, "If an employee establishes a claim and secures judgment on such claim under subsection (1) of section 48-1231: (1) An amount equal to the judgment may be recovered from the employer; or (2) if the nonpayment of wages is found to be willful, an amount equal to two times the amount of unpaid wages shall be recovered from the employer."

151. As discussed herein, Defendants had a binding and valid contract with Plaintiff and every other Rule 23 Nebraska Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate, plus any overtime pay required by applicable law, in consideration of the work duties Plaintiff and the Rule 23 Nebraska Class members performed on Defendants' behalf.

152. For example, Defendants offered to compensate Plaintiff at a minimum of $15.50 per hour, plus any overtime pay required by applicable law, if she agreed to perform services for Defendant, as an Hourly Employee. Plaintiff accepted Defendants' offer and performed under the

contract by fulfilling her duties as an hourly employee, which included, but was not limited to, the pre- , mid- and post-shift work activities required of her, in reliance on the offer.

153. Evidence of the contract includes Defendants' letters offering employment, pay statements, and other documentary evidence in Defendants' possession. Additionally, Defendants made verbal offers for payment at a specified rate, above minimum wage for hourly employee work, which Plaintiff accepted and performed, including the unpaid pre-, mid- and post-shift work activities described herein, but Defendants failed to perform by paying Plaintiff and the Rule 23 Nebraska Class the promised wages for all work.

154. Upon information and belief, each Rule 23 Nebraska Class member, including Plaintiff, was contractually entitled to a minimum hourly rate within the applicable period, in addition to applicable overtime premiums.

155. Plaintiff and every other Rule 23 Nebraska Class member accepted the terms of Defendants' contractual promises contained in Defendants' offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid- and post-shift work described herein.

156. Defendants breached their contractual promises by failing to pay Plaintiff and the Rule 23 Nebraska Class for all wages (regular and overtime) owed.

157. Plaintiff and the Rule 23 Nebraska Class also did not receive accurate wage statements that detailed each hour worked and their rate of pay because Defendants failed to include the compensable time discussed herein in the paystubs provided to Plaintiff and the Rule 23 Nebraska Class.

158. Defendants violated the NWHA and the NWPCA by regularly and repeatedly

failing to compensate Plaintiff and the Rule 23 Nebraska Class for the time spent on the work activities described in this Complaint, and for failing to provide Plaintiff and the Rule 23 Nebraska Class with accurate wage statements reflecting all hours worked each workday and each workweek.

159. As a result, Plaintiff and the Rule 23 Nebraska Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Rule 23 Nebraska Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief at an amount to be proven

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**BREACH OF CONTRACT**

160. Plaintiffs re-allege and incorporate all previous paragraphs herein.

161. At all times relevant to this action, Defendants had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on behalf of Defendants.

162. Evidence of these contracts include Defendants' letters offering employment, pay statements, and other documentary evidence in Defendants' possession. Additionally, Defendants made verbal offers for payment at a specified, above minimum wage for Representative work, which Plaintiffs accepted and performed, but Defendants failed to perform by paying Plaintiffs and the Rule 23 Nationwide Class the promised wages.

163. For example, Defendants offered to compensate Plaintiff Robinson and Plaintiff Keller-Lamonde at a minimum of $15.50 per hour if they agreed to perform services for Defendants as Representatives. Plaintiffs accepted Defendants' offer and performed their duties as

Representatives in reliance on the offers.

164. Defendants breached their contractual promises by failing to pay Representatives at their fixed, pre-agreed upon hourly rate for *all* of the hours worked. This time includes hours worked before Plaintiffs and the Rule 23 Nationwide Class reached forty (40) hours per week and at a rate that averaged out to **more** than the applicable minimum wage.

165. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, was contractually entitled to a minimum hourly rate of approximately $13.00 – $30.00 per hour within the applicable period.

166. Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Defendants' contractual promises contained in Defendants' offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid- and post-shift work described herein.

167. By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for all the work they performed each shift in connection with the off-the-clock work described herein, Defendants systematically breached their contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

168. Defendants can easily ascertain the amount of damages owed to Plaintiffs and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendants' payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

169. Plaintiffs and the Rule 23 Nationwide Class members' remedies under the FLSA

are inadequate in this case to the extent Defendants paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

170. Defendants also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

171. As a direct and proximate result of Defendants' contractual breaches, Plaintiffs and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

## COUNT IV
## RULE 23 NATIONWIDE CLASS ACTION
## UNJUST ENRICHMENT/QUANTUM MERUIT

172. Plaintiffs re-allege and incorporate all previous paragraphs herein.

173. This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

174. At all times relevant to this action, Defendants promised Plaintiffs and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed for the benefit of Defendants.

175. Plaintiffs and every other Rule 23 Nationwide Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

176. Throughout their employment, Plaintiffs and the Rule 23 Nationwide Class worked up to, but sometimes not reaching or in excess of, forty (40) hours in a workweek.

177. By not paying Plaintiffs and every other Rule 23 Nationwide Class member the

agreed upon hourly wage for the off-the-clock work they performed each shift, Defendants were unjustly enriched.

178. Plaintiffs and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendants.

179. Defendants received and accepted the above-referenced off-the-clock work from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

180. Despite this, Defendants did not pay Plaintiffs and the Rule 23 Nationwide Class members for all of their work, which included that which they performed up to, but not reaching, forty (40) hours per week, and at a rate that averaged out to more than the applicable minimum wage.

181. Upon information and belief, Defendants used the monies owed to Plaintiffs and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

182. Defendants have been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Nationwide Class performed for Defendants' benefit, without having compensated Plaintiffs and the Rule 23 Nationwide Class for the same.

183. Plaintiffs and the Rule 23 Nationwide Class suffered detriment due to Defendants' failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

184. As a direct and proximate result of Defendants' actions, Plaintiffs and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief:

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 Nebraska Class) pursuant to Rule 23(b)(3) with respect to Plaintiff Keller-Lamonde's state law claims under the NWHA and the NWPCA (Count II);

c. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(3) with respect to Plaintiffs' breach of contract claim and unjust enrichment claims (Count III and IV);

d. An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective members and authorizing Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their right to join and participate in this lawsuit;

e. An Order designating the Plaintiffs as representatives of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

f. An Order designating Plaintiff Keller-Lamonde as representative of the Rule 23 Nebraska Class, and undersigned counsel as class counsel for the same;

g. An Order declaring Defendants violated the FLSA;

h. An Order declaring Defendants' violations of the FLSA were willful;

i. An Order declaring Defendants' violated Nebraska wage-and-hour law;

j. An Order declaring Defendants breached their contracts with Plaintiffs and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendants were unjustly enriched) by failing to pay them for mandatory pre-, mid-, and post-shift work activities described herein at a pre-established (contractual) regularly hourly rate;

k. An Order granting judgment in favor of Plaintiffs and against Defendants and awarding Plaintiffs, the FLSA Collective, and the Rule 23 Nationwide Class, and the Rule 23 Nebraska Class the full amount of damages and penalty damages available by law;

l. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

m. An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

n. An Order awarding such other and further relief as this Court deems appropriate.

Dated: October 2, 2025 Respectfully Submitted,

*/s/ Kevin J. Stoops*

Kevin J. Stoops (P64371)
Kathryn E. Milz (IL 6297213)*
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
kmilz@sommerspc.com

*Attorneys for Plaintiffs and the Putative Collective/Class Members*

*(pro hac vice application forthcoming)

**DEMAND FOR JURY TRIAL**

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.

Dated: October 2, 2025 Respectfully Submitted,

*/s/ Kevin J. Stoops*

Kevin J. Stoops (P64371)
Kathryn E. Milz (IL 6297213)*
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
kmilz@sommerspc.com

*Attorneys for Plaintiffs and the Putative Collective/Class Members*

*(pro hac vice application forthcoming)